Slip Op. 10-102

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                :
ALDEN LEEDS INC.,               :
                                :
                                :
    Plaintiff,                  :
                                : Before: Richard K. Eaton, Judge
        v.                      :
                                :
UNITED STATES,                  : Court No. 09-00476
                                :
    Defendant.                  :
                                : Public Version
_____:
```

OPINION AND ORDER

[Defendant's motion to dismiss denied.]

Dated: September 7, 2010

*Sokol, Behot & Fiorenzo* (*Joseph B. Fiorenzo*), for plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, *Barbara S. Williams*, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Alexander Vanderweide* and *Arlene Pianko Groner*); Office of Chief Counsel, International Trade Litigation, United States Customs and Border Protection (*Edward N. Maurer*), of counsel, for defendant.

Eaton, Judge: This matter is before the court on the motion of defendant the United States, on behalf of United States Customs and Border Protection ("CBP" or "Customs"), to dismiss the complaint of plaintiff Alden Leeds Inc. ("Alden Leeds") for (1) lack of subject-matter jurisdiction or (2) failure to state a claim for which relief can be granted. The question presented is

whether the court may hear plaintiff's claim even though Alden
Leeds failed to protest timely the unlawful publication of a
notice of deemed liquidation.  Defendant makes no serious
argument that it has any rightful claim to plaintiff's money;
rather, it insists that the court has no power to order its
return.

By its complaint, plaintiff asks the court to use its
equitable powers to "instruct CBP to refund Alden Leeds the
difference between the estimated deposits of 24.83[ percent] and
the final assessment duties [of 4.07 percent] calculated for
Alden Leeds [following an administrative review] along with
interest."  Am. Compl. ¶ 21(b).[1]  For the reasons set forth
below, defendant's motion to dismiss is denied.


BACKGROUND

On June 24, 2005, the United States Department of Commerce
("Commerce") published an antidumping duty order for chlorinated
isocyanurates ("isos") from Spain (the "subject merchandise").
Chlorinated Isocyanurates from Spain, 70 Fed. Reg. 36,562 (Dep't
of Commerce June 24, 2005) (notice of antidumping duty order)
(the "Order").  The Order provided that the isos exported by
Aragonesas Delsa S.A. would receive an antidumping duty margin of

_____

[1]    Plaintiff's amended complaint mislabels ¶ 21 as (a
second) ¶ 12.

24.83 percent.  *Id.* at 36,563.  On July 2, 2007, Aragonesas

Industrias y Energia S.A., the successor-in-interest of

Aragonesas Delsa S.A. (collectively, with Aragonesas Industrias y

Energia S.A., "Aragonesas"),[2] filed a request for an

administrative review of the isos it produced and exported to the

United States.  *See* 19 C.F.R. § 351.213(b) (2009).  Commerce

subsequently published a notice of initiation of an

administrative review of the Order for the period June 1, 2006

through May 31, 2007 (the "POR").  Initiation of Antidumping and

Countervailing Duty Administrative Reviews and Request for

Revocation in Part, 72 Fed. Reg. 41,057, 41,057 (Dep't. of

Commerce July 26, 2007).  Commerce issued the final results of

the review on December 30, 2008, setting the final assessment

rate for the subject merchandise at 4.07 percent.  *See*

Chlorinated Isocyanurates from Spain, 73 Fed. Reg. 79,789, 79,789

(Dep't. of Commerce Dec. 30, 2008) (final results of antidumping

duty administrative review) (the "Final Results").

When its entries are subject to an antidumping duty order,

an importer, such as Alden Leeds, generally makes a cash deposit

of the estimated antidumping duties contained in Commerce's

---

[2]     Aragonesas is a Spanish producer of isos, which can be
used as a swimming pool chemical.  Alden Leeds, located in South
Kearny, New Jersey, is an American importer of swimming pool
chemicals.  During the period of June 1, 2006 through May 31,
2007, Alden Leeds imported isos produced by Aragonesas.  Am.
Compl. ¶ 1.

order.  *See* 19 U.S.C. § 1673e(a)(3) (2006).  Here, in accordance

with the Order, Alden Leeds made a deposit with Customs covering

the estimated duty of 24.83 percent (approximately $400,000) for

its entries.  Pl.'s Resp. to Def.'s Mot. to Dismiss for Lack of

Jur. or, in the Alt., for Fail. to St. a Cl. ("Pl.'s Resp.") 1—2.

The amount of duty owed by an importer, however, is not final

until the importer's entries are liquidated.[3]  The final amount

on liquidation may vary from the deposit amount after Commerce

completes an administrative review.  *See generally* 19 U.S.C.

§ 1675; *see also Consol. Bearings Co. v. United States*, 348 F.3d

997, 1000 (Fed. Cir. 2003).

As a result of Aragonesas's request for an administrative

review, the liquidation of plaintiff's merchandise was suspended.

In order to prevent the liquidation of merchandise subject to a

review prior to the final determination, the law provides for a

suspension of liquidation while the review is proceeding.

*Canadian Wheat Bd. v. United States*, 33 CIT __, __, 637 F. Supp.

2d 1329, 1334 n.6 (2009) ("*Canadian Wheat Bd.*").

On February 7, 2008, Commerce sent Message No. 8038217 to

Customs, which stated that Aragonesas's isos were subject to a

suspension of liquidation.  Admin. R. ("AR") 13.  Despite

Commerce's suspension of liquidation and despite having received

---

[3]     *See* 19 C.F.R. § 159.1 ("Liquidation means the final
computation or ascertainment of the duties . . . .").

clear instructions from Commerce that plaintiff's entries were

not to be liquidated during the pendency of the review, Customs

posted a bulletin notice of liquidation on April 25, 2008 (the

"Bulletin Notice").  This posting indicated that the twelve

entries for which Aragonesas was the exporter and Alden Leeds was

the importer[4] had been liquidated by operation of law (the

---

[4]     Counsel for defendant, at oral argument, appeared to
attempt to convert what was obviously a mistake into a volitional
act by suggesting that Customs might have intended to give notice
that these entries were liquidated by operation of law.  Tr. of
Or. Arg. on Def.'s Mot. to Dismiss at 11—12.  Apparently, the
idea behind this argument is that, even though Customs had
received notice that Aragonesas's entries were to remain
unliquidated, the notice did not necessarily apply to Alden
Leeds.  Counsel appeared to suggest, without saying so directly,
that Customs may have concluded that the suspension did not apply
to Alden Leeds and that this conclusion could be contested only
by way of a protest.  Id. at 18—19.  It is worth noting that this
argument cannot be found in the briefs and papers that defendant
submitted to the court.

        To the extent that defendant actually is advancing this
argument, it is obviously a litigation position.  The only way
that Customs was aware that Alden Leeds had entries to liquidate
was that plaintiff's customs broker had filed certain papers when
the entries were made.  These papers, which Customs had before it
when it issued the Bulletin Notice, were supplied to the court by
defendant as part of the administrative record of this case.  The
court, therefore, has before it twelve separate sets of documents
each representing an individual entry.  AR 1—12.  Each set
contains: 1) an Environmental Protection Agency Notice of Arrival
of Pesticides and Devices; 2) a Department of the
Treasury/Customs Service Entry Summary; 3) an Importer's Blanket
Statement of Non-Reimbursement of Antidumping Duties; and 4) a
Department of the Treasury/Customs Service Entry/Immediate
Delivery Form.

        An examination of these forms demonstrates that 1)
Aragonesas is clearly named as the "Shipper" and Alden Leeds is
clearly named as the "Importer"; 2) the antidumping duty order to
which the merchandise was subject was identified; 3) the

"purported deemed liquidation") on January 26, 2008 under the

provisions of 19 U.S.C. § 1504(d).  Def.'s Reply to Pl.'s Resp.

to Mot. to Dismiss for Lack of Jur. or, in the Alt., for Fail. to

St. a Cl. 6 (citing AR 14).

    On December 30, 2008, Commerce published the final results

of its review and found that the subject merchandise entered

during the POR should be subject to an antidumping duty rate of

4.07 percent,[5] a substantially lower rate than the estimated

_____

antidumping duty rate for plaintiff's entries was set forth; and
4) the entry numbers, which correspond to the entry numbers
listed on the Bulletin Notice, are set out clearly.

        Additionally, as requested at oral argument, defendant,
on June 14, 2010, filed Message No. [[



                                                              ]].
Message No. [[        ]] renders defendant's position, advanced at
oral argument, implausible.

        Customs employees are, of course, familiar with the
agency's own forms and their contents.  Customs has produced no
evidence to refute the clear conclusion that the Bulletin Notice
was a simple mistake.  Thus, any suggestion that Customs intended
to post the Bulletin Notice of a deemed liquidation because
Customs was unaware that the entries in contention were the same
entries whose suspension was reaffirmed by Message No. 8038217 of
February 7, 2008 is so unreasonable as to be beyond the realm of
serious consideration.

        [5]    "[T]he United States uses a retrospective assessment
system under which final liability for antidumping and
countervailing duties is determined after merchandise is
imported."  19 C.F.R. § 351.212(a).  While an importer deposits
estimated duties on entry of merchandise, the actual duties are

deposit rate of 24.83 percent collected from Alden Leeds.   Final

Results, 73 Fed. Reg. at 79,789.   Alden Leeds immediately sought

a refund of the difference between the estimated deposit rate and

the final rate determined in the review.   Rather than receiving

its refund, Alden Leeds was informed that the subject merchandise

had been deemed liquidated at the deposit rate on January 26,

2008.   Pl.'s Resp. 3—4.

   Plaintiff then brought this suit to recover the difference

between the deposit rate and the rate found in the Final Results.

Am. Compl. ¶ 21(b).   Defendant has moved to dismiss the case

pursuant to USCIT Rule 12(b)(1) by insisting that because

plaintiff failed to protest the purported deemed liquidation

found in the Bulletin Notice, this Court does not have subject-

matter jurisdiction to grant relief to plaintiff.   Mem. in Supp.

of Def.'s Mot. to Dismiss for Lack of Jur. or, in the Alt., for

───────────────────

determined later in the assessment process, at the time when the
entries are liquidated. *See* 19 C.F.R. § 141.103.   Thus, when an
administrative review is requested by an interested party, an
importer's payment of the actual duties is not due until the
entries are liquidated at the rate determined by Commerce's
review. *Parkdale Int'l v. United States*, 475 F.3d 1375, 1376—77
(Fed. Cir. 2007) (citing 19 C.F.R. § 141.1(a)); *see also* 19
C.F.R. § 351.212(a) (stating that "[g]enerally, the amount of
duties to be assessed is determined in a review of the order
covering a discrete period of time."). Additionally, "[b]ecause
19 U.S.C. § 1675(a)(2) expressly calls for the retrospective
application of antidumping review determinations . . .,
suspension of liquidation during the pendency of periodic
antidumping review is unquestionably 'required by statute.'"
*Am. Permac, Inc. v. United States*, 10 CIT 535, 539, 642 F. Supp.
1187, 1191 (1986).

Fail. to St. a Cl. ("Def.'s Mem.") 5.  In the alternative,

defendant argues that plaintiff's complaint should be dismissed

for failure to state a claim upon which relief can be granted

because of the failure to protest timely the Bulletin Notice.

Def.'s Mem. 11; *see* USCIT R. 12(b)(5).  For the following

reasons, defendant's motion is denied.


STANDARD OF REVIEW

As the party seeking to invoke this Court's authority, Alden

Leeds bears the burden of establishing subject-matter

jurisdiction.  *AutoAlliance Int'l, Inc. v. United States*, 29 CIT

1082, 1088, 398 F. Supp. 2d 1326, 1332 (2005) (citations

omitted).  "[I]t is of utmost importance that mere recitation of

a basis for jurisdiction not be controlling."  *Hartford Fire Ins.

Co. v. United States*, 544 F.3d 1289, 1293 (Fed. Cir. 2008)

(citation omitted).  Alden Leeds must then plead facts from which

this Court may conclude that it has subject-matter jurisdiction

with respect to each of its claims.  *Schick v. United States*, 31

CIT 2017, 2020, 533 F. Supp. 2d 1276, 1281 (2007) (citing *McNutt

v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)

(explaining that a plaintiff "must allege in his pleading the

facts essential to show jurisdiction")).

In evaluating defendant's motion to dismiss for failure to state a claim upon which relief can be granted, this Court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party." *United States v. Ford Motor Co.*, 497 F.3d 1331, 1336 (Fed. Cir. 2007) (citation omitted).

DISCUSSION

I.   Jurisdiction Under 28 U.S.C. § 1581(i)

Defendant asserts that because 28 U.S.C. § 1581(a) jurisdiction was available to plaintiff as an avenue for relief, it cannot now bring a case under 28 U.S.C. § 1581(i).  In other words, defendant insists that had Alden Leeds wished to dispute the purported deemed liquidation, it first was required to file a protest.  *See* 19 U.S.C. § 1514(a).  According to defendant, if plaintiff failed to gain relief by way of protest, it could then have petitioned this Court for relief pursuant to 28 U.S.C. § 1581(a).[6]  Def.'s Mem. 7—8.

By its complaint, plaintiff asks the court to find jurisdiction under § 1581(i).  Am. Compl. ¶¶ 2—3.  As this

---

[6]     Section 1581(a) provides that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930."

Court's residual jurisdiction provision, § 1581(i) provides for

the exercise of jurisdiction when relief is not available under

another subsection of § 1581.[7]  *Norcal/Crosetti Foods, Inc. v.*

*United States*, 963 F.2d 356, 359 (Fed. Cir. 1992).  According to

plaintiff, in this case, jurisdiction under § 1581(i) is

triggered because other possible remedies were "manifestly

inadequate."  *Miller & Co. v. United States*, 824 F.2d 961, 963

(Fed. Cir. 1987) ("*Miller*").

In making this argument, plaintiff asserts that, because the

Bulletin Notice was posted at the customshouse while Commerce's

---

[7]     As noted by the United States Court of Appeals for the
Federal Circuit, § 1581(i) "was intended to give the Court of
International Trade broad residual authority" over cases
involving trade transactions.  *Conoco, Inc. v. United States*
*Foreign Trade Zones Bd.*, 18 F.3d 1581, 1588 (Fed. Cir. 1994).
Defendant cites *Norcal/Crosetti Foods, Inc. v. United States* for
the proposition that "[t]his limitation 'preserves the
congressionally mandated procedures and safeguards . . . provided
in the other subsections [of 28 U.S.C. § 1581] . . ., absent
which litigants could ignore the precepts of subsections (a)-(h)
and immediately file suit in the Court of International Trade
under subsection (i).'"  963 F.2d 356, 359 (Fed. Cir. 1992)
(citation omitted).  Indeed, the Federal Circuit has indicated
that "[s]ection 1581(i) jurisdiction may not be invoked when
jurisdiction under another subsection of § 1581 is or could have
been available, unless the remedy provided under that other
subsection would be manifestly inadequate."  *Miller & Co. v.*
*United States*, 824 F.2d 961, 963 (Fed. Cir. 1987) (citation
omitted); *see, e.g.*, *Trs. in Bankr. of N. Am. Rubber Thread Co.,*
*Inc. v. United States*, 593 F.3d 1346, 1353 (Fed. Cir. 2010)
(affirming § 1581(i) jurisdiction for party that "ha[d] no
current or future opportunities to get judicial review"); *Pac*
*Fung Feather Co., Ltd. v. United States*, 111 F.3d 114, 116 (Fed.
Cir. 1997) (sustaining jurisdiction when "[s]ection 1581(i) was
the importers' only available and potentially adequate option").

suspension was in effect, plaintiff's entries were not, in fact, liquidated.  Consequently, plaintiff maintains that there was no event for it to have protested under 19 U.S.C. § 1514(a).  Pl.'s Resp. 5.  As a result, plaintiff concludes that, as it could not lodge a protest, which if denied would have provided jurisdiction for a lawsuit in this Court under 28 U.S.C. § 1581(a), relief under that section was necessarily "manifestly inadequate." Pl.'s Resp. 5.  Therefore, Alden Leeds urges the court to exercise its jurisdiction under § 1581(i) in order to provide the appropriate relief, i.e., the return of its money.  Am. Compl. ¶¶ 2—3, 21.


II.  Deemed Liquidation Under 19 U.S.C. § 1504(d) and the
     Suspension of Liquidation

     Congress enacted the deemed liquidation statute, 19 U.S.C. § 1504(d), to protect importers from the uncertainties in the United States' duty assessment process.  *See United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1559 (Fed. Cir. 1997). Pursuant to this provision, entries that remain unliquidated for six months are liquidated by operation of law at their entered rate.  *See* 19 U.S.C. § 1504(d).

     Before the law operates to bring about a deemed liquidation, however, three preconditions must be met: "(1) the suspension of liquidation that was in place must have been removed; (2) Customs

must have received notice of the removal of the suspension; and

(3) Customs must not liquidate the entry at issue within six

months of receiving such notice." *Fujitsu Gen. Am., Inc. v.*

*United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002).  Once these

three preconditions have been satisfied, deemed liquidation under

19 U.S.C. § 1504(d) occurs by operation of law.  Deemed

liquidation under § 1504(d), however, does not result from any

affirmative action on the part of Customs.  Accordingly,

> when a suspension required by statute or court
> order is removed, the Customs Service shall
> liquidate the entry . . . within 6 months
> after receiving notice of the removal from the
> Department of Commerce . . . . Any entry . .
> . not liquidated by the Customs Service within
> 6 months after receiving such notice shall be
> treated as having been liquidated at the rate
> of duty, value, quantity, and amount of duty
> asserted by the importer of record . . . .

19 U.S.C. § 1504(d).  As this subsubsection makes clear, deemed

liquidation results from operation of law, and Customs makes no

decision and performs no act in order to bring about a deemed

liquidation.[8]

A suspension of liquidation acts to stop liquidation,

including a deemed liquidation, from occurring.  Indeed, a

---

[8]     When a deemed liquidation has taken place by operation
of law, it may be the subject of a protest. *Koyo Corp. v. United
States*, 497 F.3d 1231, 1243 (Fed. Cir. 2007).  Judicial review is
then available if that protest is denied.  *See* 28 U.S.C.
§ 1581(a).  Where, as here, no deemed liquidation has taken
place, relief by way of protest is not available.

suspension of liquidation serves an important purpose in ensuring the application of proper unfair trade duties.  Thus, liquidation is suspended during an administrative review so that the entries may be liquidated at the rate determined by the review.  *See, e.g.*, *Canadian Wheat Bd.*, 33 CIT at __, 637 F. Supp. 2d at 1334 n.6 ("A request for an administrative review results in the continuation of the suspension of liquidation.").  In order to assure that the entries will be liquidated at the finally determined rate, the suspension of liquidation is not terminated until the final results of an administrative review are published in the Federal Register.  *See*, *e.g.*, *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (2002) (holding that the "suspension of liquidation [is] removed when the final results of the administrative review [are] published in the Federal Register").

Defendant, however, asserts that plaintiff could not rely on the suspension of liquidation, resulting from the administrative review, to shield it from claims of erroneous or unlawful deemed liquidation.  While defendant concedes that the suspension, in fact, prevented a deemed liquidation from taking place, it states that plaintiff has no avenue to relief by this lawsuit.  Rather, defendant argues that plaintiff was required to protest the purported deemed liquidation that was announced in the Bulletin Notice, and only if the protest were denied could the matter be heard in this Court.  According to defendant, this is the holding

in *Juice Farms, Inc. v. United States*, 68 F.3d 1344 (Fed. Cir. 1995) ("*Juice Farms*").

In *Juice Farms*, the plaintiff importer's entries were subject to a suspension of liquidation pending an antidumping review.  68 F.3d at 1345.  Despite the suspension, Customs, actually liquidated the entries.  *Id.*  That is, Customs took affirmative steps to liquidate the importer's merchandise. Customs also posted bulletin notices of liquidation at the customshouse.  *Id.* at 1346.  Relying on Commerce's suspension of liquidation, the plaintiff did not monitor the posting of bulletin notices of liquidation for its entries at the customshouse.  *Id.*

In *Juice Farms*, as this case, it was only at the conclusion of the administrative review that the plaintiff learned of the liquidation of its entries, at which point it protested and requested a refund of the excess antidumping duty deposits that it posted for its entries.  *Id.* at 1345—46.  Customs, however, denied the plaintiff's protest as untimely.  *Id.* at 1346.  The plaintiff filed suit challenging Custom's erroneous liquidations of its entries, petitioning this Court to find jurisdiction under § 1581(i).  *Id.* at 1345.  Customs sought dismissal of the suit arguing that because Juice Farms did not protest the erroneous liquidations within the time frame prescribed by statute, it had forfeited its right to bring a lawsuit under § 1581(a).  *Id.*

Having forfeited that right, Customs argued, Juice Farms could

not claim that § 1581(a) jurisdiction was "manifestly inadequate"

and thus could not sue using § 1581(i) jurisdiction.

While the erroneous liquidations in *Juice Farms* were found

to be unlawful, this Court found, and the Court of Appeals for

the Federal Circuit affirmed, that it was unable to order the

entries to be reliquidated because a timely protest was not made

by the plaintiff importer. *Id.* at 1346. The Federal Circuit

held that judicial review under 28 U.S.C. § 1581(i) was

unavailable because:

> Despite information from Customs and
> Commerce about suspension of these
> liquidations pending investigation, the
> bulletin notices adequately notified Juice
> Farms of the [actual] liquidation. Juice
> Farms failed to file a protest within ninety
> days of [the] bulletin notice posting. Juice
> Farms' protest was untimely. The Court of
> International Trade properly dismissed this
> case for lack of jurisdiction.

> Section 1581(i) of title 28 provides
> equitable relief in those cases where
> jurisdiction under the other subsections of
> section 1581 are "manifestly inadequate." In
> this case, however, Juice Farms did not show
> that the relief in 28 U.S.C. § 1581(a), if
> properly invoked, would have been inadequate,
> let alone manifestly inadequate. If Juice
> Farms had protested within ninety days of
> bulletin notices, it would have had an
> opportunity to protest the legality of
> Customs' liquidations in the Court of
> International Trade. As this court has
> stated, a remedy is not inadequate "simply
> because appellant failed to invoke it within

the time frame it prescribes."

*Id.* (citations omitted).

Defendant's argument notwithstanding, *Juice Farms* is distinguishable from the instant case because that case involved actual liquidations rather than deemed liquidations.  Thus, the important difference between this case and *Juice Farms* is that, here, Customs, by posting the Bulletin Notice, claims to have announced a deemed, and not an actual, liquidation.  This difference is critical because, here, unlike in *Juice Farms*, no liquidation took place or could have taken place, and thus no protestable event existed for plaintiff to contest.  This important distinction lies in the different authority delegated to Customs with respect to actual and deemed liquidations.

Customs has the authority to take the steps that result in an actual liquidation decision.  *See generally* 19 U.S.C. § 1500. By way of contrast, Customs has no authority to effect a deemed liquidation, and can make no finding or determination as to whether or not a deemed liquidation has occurred.  As the plain language of the deemed liquidation provision makes abundantly clear, deemed liquidation occurs solely by operation of law. Thus, since the statute provides that "liquidation[s]" are the subject of protests, Alden Leeds had nothing to protest because here, unlike in *Juice Farms*, there was no liquidation.  19 U.S.C. § 1514(a).

This being the case, Alden Leeds is correct in arguing that *LG Electronics U.S.A., Inc. v. United States* is instructive. 21 CIT 1421, 991 F. Supp. 668 (1997) ("*LG Electronics*"). In that case, LG imported color television receivers from Korea that were subject to an antidumping duty order. *LG Electronics*, 21 CIT at 1422, 991 F. Supp. at 670. LG deposited antidumping duties with Customs upon entry of the subject merchandise. *Id.* at 1422, 991 F. Supp. at 670. Plaintiff then petitioned this Court for review of Commerce's determinations. *Id.* at 1422, 991 F. Supp. at 670—71. Pending review, this Court issued preliminary injunctions against liquidation of the disputed entries. *Id.* at 1422, 991 F. Supp. at 671.

Nonetheless, during the period that liquidation was enjoined, Customs posted notices of deemed liquidation at the entered rate. *Id.* at 1422, 991 F. Supp. at 671. None of the purported liquidations were protested within the time frame required by statute. *Id.* at 1423, 991 F. Supp. at 671. LG and Commerce eventually reached a settlement that lowered the antidumping duty rates from those imposed at entry. *Id.* at 1423, 991 F. Supp. at 671. As a result, the preliminary injunctions against liquidation were lifted, permitting liquidation at the new rates set by Commerce. *Id.* at 1423, 991 F. Supp. at 671—72. Customs, however, refused to reliquidate the entries at the lower rate and the importer filed suit in this Court, invoking 28

U.S.C. § 1581(i) jurisdiction. *Id.* at 1423, 991 F. Supp. at 672.

Customs moved for summary judgment claiming that the Court had no

jurisdiction over LG's claims. *Id.* at 1421, 991 F. Supp. at 670.

The *LG Electronics* Court denied Customs' motion for summary

judgment and confirmed jurisdiction under § 1581(i). *Id.* at

1430, 991 F. Supp. at 677.

In doing so, the *LG Electronics* Court found that Customs'

erroneous notices of deemed liquidation were invalid and of no

legal consequence. *Id.* at 1429, 991 F. Supp. at 676.

> Liquidation is deemed to have occurred by
> operation of law . . . [except] in cases of
> extension, suspension or court order . . . .
> Here liquidation was suspended. Thus, as a
> matter of law, no deemed liquidation . . .
> occurred. Although LG received erroneous
> notice of liquidation of these entries,
> plaintiff's claim may be heard, because LG did
> not have to protest within 90 days, as
> specified by 19 U.S.C. § 1514, to preserve its
> right to judicial review. The computer-
> generated notices of deemed liquidation are
> invalid and legally inconsequential, as deemed
> liquidation can occur only by operation of
> law.

*Id.* at 1429, 991 F. Supp. at 676 (citation omitted). The court

further noted:

> Notwithstanding Customs' provision for
> posting notice of deemed liquidation . . .
> deemed liquidation itself occurs by operation
> of law. Where a liquidation has occurred by
> operation of law, notice starts the clock for
> the protest period, . . . but the regulations
> specify that the notice be "dated as of the
> date of expiration of the statutory period[]"

> . . . . Such notice may be posted any time
> "within a reasonable period after each
> liquidation by operation of law[]" . . . .
> Accordingly, erroneous notice cannot create a
> deemed liquidation. Without the expiration of
> the statutory period, there is no date to be
> noticed. As the statutory period for protest
> never began to run, plaintiff may bring suit
> under 28 U.S.C. § 1581(i) to compel
> liquidation in accordance with the prior order
> of the court.

*Id.* at 1430, 991 F. Supp at 676—77 (citations omitted). In *LG Electronics*, as here, the entries purportedly deemed liquidated were not, because "as a matter of law, no deemed liquidation . . . occurred." *Id.* at 1429, 991 F. Supp. at 676.


**III. This Court Has Jurisdiction to Hear Plaintiff's Case**

As has been seen, Customs posted the Bulletin Notice while Commerce's suspension of liquidation was in effect and after having received clear notice of the suspension of liquidation for the subject merchandise. In addition, none of the § 1504(d) preconditions necessary for a deemed liquidation to take place were met prior to the posting of the Bulletin Notice at the customshouse. Further, as this Court has made clear, "Congress intended the suspension of liquidation required during § 1675 reviews to override the 'deemed liquidated' provisions of § 1504." *Am. Permac, Inc. v. United States*, 10 CIT 535, 543, 642 F. Supp. 1187, 1194—95 (1986). As a result, no argument can be

advanced to support a claim that a deemed liquidation did, in fact, occur.

As has been noted, only "liquidation[s]" may be the subject of protests.  19 U.S.C. § 1514(a).  Consequently, Customs' posting of the Bulletin Notice was a legal nullity and did not have the legal ramifications that defendant argues.[9]  As a result, despite defendant's argument to the contrary, Alden Leeds was not required to protest Customs' legally inconsequential Bulletin Notice.  *See LG Electronics*, 21 CIT at 1429, 991 F. Supp. at 676.

---

[9]     Title 19 U.S.C. § 1514(a) provides, in relevant part, that

> the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry . . . shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title.  When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

Since no protest of the Bulletin Notice was required, judicial review of its contents under § 1581(a) was unavailable. As a result, plaintiff has met the "manifestly inadequate" standard, thus triggering this Court's § 1581(i) residual jurisdiction. *Miller*, 824 F.2d at 963. Therefore, the court finds it has jurisdiction to hear plaintiff's claims under § 1581(i)(4).

IV. Plaintiff Has Stated a Claim Upon Which Relief Can Be Granted

For the same reasons that this Court has jurisdiction, plaintiff also has also stated a valid claim, notwithstanding defendant's contention that "19 U.S.C. § 1514(a) precludes any relief." Def.'s Mem. 11; *see* USCIT R. 12(b)(5). By claiming jurisdiction under 19 U.S.C. § 1581(i), plaintiff asserts that its cause of action arises under the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 702 *et seq.; see also Royal United Corp. v. United States*, 34 CIT __, __, Slip Op. 10-71 at 13 (June 25, 2010) ("It is, of course, axiomatic that this Court exercises jurisdiction pursuant to Subsection 1581(i) to adjudicate a cause of action under the APA."). Section 702 of the APA provides that "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Here, plaintiff alleges that it suffered a legal wrong as a result of

Customs' "wrongful disregard of the suspension of liquidation
instructions" by posting the Bulletin Notice.  Am. Compl. ¶ 18.
The court's previous discussion of the lawfulness of this
Bulletin Notice indicates that has plaintiff stated a valid
claim.

Moreover, under the APA, the court has the authority to
"hold unlawful and set aside agency action . . . found to be . .
. arbitrary, capricious, an abuse of discretion, or otherwise not
in accordance with law."  5 U.S.C. § 706(2)(A).  Because it is
apparent that the court may grant relief to plaintiff by setting
the aside the Bulletin Notice, Alden Leeds has stated a claim
upon which relief can be granted, and defendant's motion must
fail.  *See Totes-Isotoner Corp. v. United States*, 32 CIT __, __,
569 F. Supp. 2d 1315, 1328 (2008) (holding, in light of the
Supreme Court's pleading analysis in *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544 (2007), that plaintiffs must now "allege
facts that could provide a showing that [they are] entitled to
relief").

CONCLUSION

Here, Customs seeks to impose procedural bars to judicial
review of its erroneous act.  Should its efforts succeed, Customs
would retain money that otherwise would be returned to Alden

Court No. 09-00476                                      Page 23

Leeds.  Customs does not argue, nor indeed could it argue, that
it is entitled to Alden Leeds's money.  Indeed, in order to
advance such an argument, Customs would have to contend that a
deemed liquidation that could not and did not take place actually
transpired.  Nonetheless, premised on the notion that Alden Leeds
should have monitored Customs' behavior in order to catch the
agency's own mistakes, Customs seeks to avoid returning the
company's funds.  As has been seen, the law does not direct this
result.  Therefore, for the foregoing reasons, defendant's motion
to dismiss is denied.


                                         /s/ Richard K. Eaton
                                         Richard K. Eaton


Dated:   September 7, 2010
         New York, New York